477 So.2d 672 (1985)
Keith Patrick LANDRY
v.
The BOARD OF LEVEE COMMISSIONERS OF the ORLEANS LEVEE DISTRICT.
No. 85-C-0688.
Supreme Court of Louisiana.
October 21, 1985.
Lawrence Kullman, Nicholas Noriea, Jr., Samuel Gainsburgh, Kierr, Gainsburgh, Benjamin, Fallon & Lewis, New Orleans, for plaintiff-applicant.
Sylvia Landry, Montgomery, Barnette, Brown & Read, Baton Rouge, for defendant-respondent.
CALOGERO, Justice.
We must determine whether R.S. 9:2791 and R.S. 9:2795, statutes which confer immunity and/or limited liability for landowners who permit use of their premises for recreational purposes, apply to the advantage of the Orleans Levee Board in a tort suit brought against the Board by a recreational crab fisherman injured because of a hole in the ground adjacent to the Lake Pontchartrain seawall on the New Orleans lakefront.
Keith Patrick Landry brought suit against the Board of Commissioners of the Orleans Levee District and the State of Louisiana seeking damages for injuries sustained when, after ascending the Lake Pontchartrain seawall, he lost his balance and fell while trying to avoid stepping into a partially hidden hole in the ground. The *673 trial court found the Levee Board to be strictly liable, but reduced the amount of the award by two-thirds, attributing that amount of fault to Landry. The Court of Appeal reversed,[1] holding that the Levee Board was immune from suit by authority of La.R.S. 9:2791 and 9:2795. We granted certiorari to review that decision.[2]
If the statutes apply to the State and its political subdivisions, and if the statutes apply in this factual situation, the decision of the Court of Appeal is correct and should be affirmed. The first question, whether those statutes apply to the State and its political subdivisions, has not been answered by this Court. Several Court of Appeal opinions have afforded the State and its political subdivisions immunity under one or both La.R.S. 9:2791 and 9:2795. See Keelen v. State of Louisiana, 454 So.2d 147 (La.App. 1st Cir.1984), rev'd on other grounds, 463 So.2d 1287 (La.1985); Pratt v. State of Louisiana, 408 So.2d 336 (La.App. 3rd Cir.1981) writ denied, 412 So.2d 1098 (La.1982) with three justices dissenting from denial; Rodrigue v. Fireman's Fund Insurance Co., 449 So.2d 1042 (La.App. 5th Cir.1984); Thomas v. Jeane, 411 So.2d 744 (La.App. 3d Cir.1982); and, Rushing v. State of Louisiana, Louisiana Health and Resources Administration, 381 So.2d 1250 (La.App. 1st Cir.1980).
When we were presented the issue whether the statutes apply to the State in the only case to reach this Court, Keelen v. State of Louisiana, Department of Culture, Recreation and Tourism, 463 So.2d 1287 (La.1985), we found it unnecessary to decide that question, having determined that it mattered not whether the State was covered by these immunity statutes inasmuch as the statutes were found not to be applicable to the factual situation in that case. The same situation prevails here, as will be shown hereinafter.
The factual setting in this case is as follows: On April 4, 1982, Landry went to the Lake Pontchartrain seawall between West End and Canal Boulevard to go crabbing. This area is owned and maintained by the Levee Board. Landry parked his car on the lake side of Lakeshore Drive, walked across a grassy area to the seawall, descended the seawall and proceeded to set his nets. After about an hour and a half, he retrieved his nets, placed them on top of his hamper and ascended the seawall to return to his car. As he reached the top of the seawall, he noticed a rather large hole adjacent to the seawall in the grassy area, which was partially obscured by weeds and other debris. In an attempt to avoid the hole he lost his balance and fell, injuring his knee. The area where plaintiff was injured lay between the seawall and Lakeshore Drive. South of Lakeshore Drive is a grassy area used largely for recreation just preceding the levee. Behind the levee is a residential area.
In order to encourage the opening of lands for recreational use the Legislature in 1964 passed R.S. 9:2791.[3] Essentially, *674 the statute recites that an owner of premises, defined in the Act as including lands, roads, waters, water courses, private ways and buildings, structures, machinery or equipment thereon, owes no duty of care to keep his premises safe for entry or use by others for hunting, fishing, camping, hiking, sightseeing or boating or to give warning of hazardous conditions to persons entering for such purposes; and that the owner giving permission to others to enter the premises for such recreational purposes does not extend any assurance that the premises are safe for such purposes, or constitute the permittee one to whom a duty of care is owed. Nor does such owner assume responsibility for or incur liability for any injuries to persons or property caused by any person to whom permission is granted. The statute does not apply to an owner's liability which would otherwise exist for deliberate and willful or malicious injury to persons or property. And it does not apply when the premises are used principally for a commercial, recreational enterprise for profit.
For similar reasons in 1975 the Legislature enacted R.S. 9:2795.[4] While this latter statute, similar to the earlier one, is not applicable to an owner of commercial recreational developments or facilities, it was nonetheless made applicable to "owners" who, with or without charge permit any person to use his land for recreational purposes as therein defined. Similar to R.S. 9:2791, R.S. 9:2795 provides that except for willful or malicious failure to warn against the dangerous condition, use, structure or activity, an owner of land does not thereby extend "any assurances that the premises are safe for any purposes", nor constitute such person the legal status of an invitee or licensee to whom a duty of care is owed, nor incur liability for any injury to person or property incurred by such person.[5]
In Keelen v. State of Louisiana, Department of Culture, Recreation and Tourism, supra, we noted that there is nothing in either statute to suggest that in enacting these laws, the Legislature intended to extend immunity to owners of all property without limit. In that decision we went on to say:
The statement of purpose of La.R.S. 9:2795 is contained in 1975 La. Acts, No. 615 § 1 and provides:

*675 The purpose of the act is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.
The use of the language "land and water areas" is suggestive of open and undeveloped expanses of property. Furthermore, the type of recreational activities enumerated in both statuteshunting, fishing, trapping, camping, nature study, etc.can normally be accommodated only on large tracts or areas of natural and undeveloped lands located in thinly-populated rural or semi-rural locales. Specification of these types of activities suggests a policy that would encourage landowners to keep their property in a natural, open and environmentally wholesome state. We would stray from this goal were we to construe the statutes to grant a blanket immunity to landowners without regard to the characteristics of their property. Thus, we conclude that the legislature intended to confer immunity upon owners of undeveloped, nonresidential rural or semi-rural land areas. The size, naturalness and remoteness or insulation from populated areas all attribute to the categorization of property as rural or semi-rural.
This discussion in Keelen is helpful in determining whether the land area adjacent to the Lake Pontchartrain seawall in New Orleans is of the type envisioned by the Legislature when it adopted the immunity granting statutes.
Keelen involved a swimming pool located in Fountainbleau State Park. The majority pretermitted the question of whether the park was non-residential, unimproved rural or semi-rural lands and relied on the fact that in all events the swimming pool was not the type of instrumentality found in the true outdoors.
The Court of Appeal in this Landry case, in holding the statutes applicable, attempted to distinguish Landry from Keelen on the basis that the injury causing condition in Landry was a hole in the ground, distinctly different from the swimming pool in Keelen.
What that court overlooked was that unless the premises on which a plaintiff's activities occur are within the purview of the statutes, the activities of the victim and the condition or instrumentality causing the injury are irrelevant. In Keelen, with respect to premises we determined that the Legislature by these statutes intended to confer immunity only upon owners of undeveloped, non-residential, rural or semirural land areas.
The Legislature surely did not intend to cloak with immunity the owner of such property as is involved here, a recreational area within a populated city, adjacent to a much travelled Lakeshore Drive, and within a stone's throw of an exclusive residential area developed in the City of New Orleans many years ago. Surely the Legislature did not contemplate such property when passing statutes in 1964 and 1975 designed "to encourage owners of land to make land and water areas available to the public for recreational purposes." This is so irrespective of whether the Legislature intended the statutes to be applicable generally to the State and its political subdivisions.
For these reasons we conclude that in this case the Orleans Levee Board does not have the benefit of landowner immunity or limitation of liability accorded by R.S. 9:2791 and R.S. 9:2795.
We appreciate how difficult it is to assess these statutes in the context of the myriad cases which can and will arise. It is surely an area ripe for legislative attention.
We note that the Legislature has addressed the matter of state liability in connection with things within its care and custody during the past legislative session by enacting 1985 Acts No. 454.[6] Since that *676 statute changes the substantive law it is prospective only, and thus in its application not relevant to the case under consideration. Act 454 of 1985 greatly limits the liability of the State and its political subdivisions as regards liability under La. Civil Code art. 2317.

Decree
For the reasons assigned, the judgment of the Court of Appeal is reversed and the judgment of the trial court insofar as it found R.S. 9:2791 and R.S. 9:2795 inapplicable in this case is reinstated. The case is remanded to the Court of Appeal to consider the assignments of error presented to them on appeal regarding quantum and the assessment of percentages of fault between the parties, matters which were pretermitted in the Court of Appeal's earlier review.
REVERSED; REMANDED TO THE COURT OF APPEAL.
NOTES
[1] 466 So.2d 758 (La.App. 4th Cir.1985).
[2] 468 So.2d 567 (La.1985).
[3] La.R.S. 9:2791 provides:

A. An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, camping, hiking, sightseeing or boating or to give warning of any hazardous conditions, use of, structure or activities on such premises to persons entering for such purposes. If such an owner, lessee or occupant give permission to another to enter the premises for such recreational purposes he does not thereby extend any assurance that the premises are safe for such purposes or constitute the person to whom permission is granted one to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted.
B. This Section does not exclude any liability which would otherwise exist for deliberate and willful or malicious injury to persons or property, nor does it create any liability where such liability does not now exist. Furthermore the provisions of this Section shall not apply when the premises are used principally for a commercial, recreational enterprise for profit; existing law governing such use is not changed by this Section.
C. The word "premises" as used in this Section includes lands, roads, waters, water courses, private ways and buildings, structures, machinery or equipment thereon.
[4] La.R.S. 9:2795 provides:

A. As used in this Section:
(1) "Land" means land, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty.
(2) "Owner" means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.
(3) "Recreational purposes" includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized vehicle operation for recreation purposes, nature study, water skiing, ice skating, sledding, snow mobiling, snow skiing, summer and winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites.
(4) "Charge" means the admission price or fee asked in return for permission to use lands.
(5) "Person" means individuals regardless of age.
B. Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:
(1) Extend any assurance that the premises are safe for any purposes.
(2) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.
(3) Incur liability for any injury to person or property incurred by such person.
C. Unless otherwise agreed in writing, the provisions of Subsection B shall be deemed applicable to the duties and liability of an owner of land leased for recreational purposes to the federal government or any state or political subdivision thereof or private persons.
D. Nothing in this Section shall be construed to relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this Act to exercise care in his use of such land and in his activities thereon, or from the legal consequences of failure to employ such care.
[5] This discussion of R.S. 9:2795 does not purport to be exhaustive. The full statute appears above at footnote 4.
[6] ACT NO. 454
 AN ACT

To enact R.S. 9:2800, relative to causes of action against the state of Louisiana, its political subdivisions, or any agency, board, commission or other instrumentality serving a public function and created by the state or a political subdivision thereof, and otherwise to provide with respect thereto.
Be it enacted by the Legislature of Louisiana: Section 1. R.S. 9:2800 is hereby enacted to read as follows:
§ 2800. Limitation of liability for public bodies
A. A public entity is responsible under Civil Code Article 2317 for damages caused by the conditions of buildings within its care and custody.
B. Except as provided for in Subsection A of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
C. Constructive notice shall mean the existence of facts which infer actual knowledge.
D. A violation of the rules and regulations promulgated by a public entity is not negligence per se.
E. "Public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.