# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CW05-89

SHELLY BENOIT

VERSUS

CITY OF LAKE CHARLES, UNITED STATES SPECIALTY
SPORTS ASSOCIATION AND UNITED STATES NATIONAL
INSURANCE COMPANY

**********

ON APPLICATION FOR SUPERVISORY WRITS FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 02-4508
HONORABLE WILFORD CARTER, DISTRICT JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders,
Marc T. Amy, Michael G. Sullivan, and Elizabeth A. Pickett, Judges.

WRIT GRANTED IN PART AND MADE PEREMPTORY; WRIT DENIED IN
PART; REMANDED.

Thibodeaux, C.J., dissents in part and assigns written reasons.
Saunders, J., concurs in part, dissents in part, and assigns reasons.

H. Alan McCall
Stockwell, Sievert, Viccellio,
Clements & Shaddock, L.L.P.
Post Office Box 2900
Lake Charles, LA 70602
(337) 436-9491
COUNSEL FOR DEFENDANTS/APPLICANTS:
    City of Lake Charles
    United National Insurance Company
    United States Specialty Sports Association

**Jeffrey T. Gaughan**
**Baggett, McCall, Burgess, Watson & Gaughan**
**3006 Country Club Road**
**Lake Charles, LA   70605**
**(337) 478-8888**
**COUNSEL FOR PLAINTIFF/RESPONDENT:**
     **Shelly Benoit**

AMY, Judge.

The plaintiff seeks damages related to a fall occurring at a ballpark owned by the City of Lake Charles. The defendants filed a motion for summary judgment, asserting immunity pursuant to La.R.S. 9:2795. The trial court denied the motion. The defendants filed the instant writ application. For the following reasons, we grant in part, deny in part and remand for further proceedings.

## Factual and Procedural Background

The plaintiff, Shelly Benoit, alleges that she fractured her ankle after she stepped into a depressed portion of the ground at a park and ballfield owned by the City of Lake Charles. Mrs. Benoit and her family were visiting the park on that day to attend a baseball tournament in which her son was participating. The City of Lake Charles and the United States Specialty Sports Association (USSSA), the organization allegedly hosting and organizing the tournament, were named as defendants as was USSSA's insurer, United National Insurance Company.

The defendants filed a motion for summary judgment, asserting the applicability of recreational immunity under La.R.S. 9:2795. The motion was denied by the trial court.

## Discussion

The defendants question the trial court's determination that genuine issues of material fact remain with regard to who was responsible for creating the depressed area on the park property. The defendants contend that such a determination is irrelevant as La.R.S. 9:2795 does not include the condition's origin as a factor in determining the applicability of the recreational immunity statute. The plaintiff contends that La.R.S. 9:2795 is inapplicable in the present case as the injury did not

occur in a "true outdoors" setting, but instead, occurred on a ballfield in a developed city park.

On appeal, a trial court's ruling on a motion for summary judgment is reviewed pursuant to the *de novo* standard of review. *Champagne v. Ward*, 03-3211 (La. 1/19/05), 893 So.2d 773. Accordingly, we consider the standard set forth in La.Code Civ.P. art. 966. Subsection B of that provision requires that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law."

The immunity provision in this case is La.R.S. 9:2795, which provides:

**§ 2795.     Limitation of liability of landowner of property used for recreational purposes; property owned by the Department of Wildlife and Fisheries; parks owned by public entities**

A.     As used in this Section:

(1)     "Land" means urban or rural land, roads, water, watercourses, private ways or buildings, structures, and machinery or equipment when attached to the realty.

(2)     "Owner" means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.

(3)     "Recreational purposes" includes but is not limited to any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized, or nonmotorized vehicle operation for recreation purposes, nature study, water skiing, ice skating, roller skating, roller blading, skate boarding, sledding, snowmobiling, snow skiing, summer and winter sports, or viewing or enjoying historical, archaeological, scenic, or scientific sites.

(4)     "Charge" means the admission price or fee asked in return for permission to use lands.

(5)     "Person" means individuals regardless of age.

2

B.    (1)    Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:

(a)    Extend any assurance that the premises are safe for any purposes.

(b)    Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.

(c)    Incur liability for any injury to person or property caused by any defect in the land regardless of whether naturally occurring or man-made.

(2)    The provisions of this Subsection shall apply to owners of commercial recreational developments or facilities for injury to persons or property arising out of the commercial recreational activity permitted at the recreational development or facility that occurs on land which does not comprise the commercial recreational development or facility and over which the owner has no control when the recreational activity commences, occurs, or terminates on the commercial recreational development or facility.

C.    Unless otherwise agreed in writing, the provisions of Subsection B shall be deemed applicable to the duties and liability of an owner of land leased for recreational purposes to the federal government or any state or political subdivision thereof or private persons.

D.    Nothing in this Section shall be construed to relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this Section to exercise care in his use of such land and in his activities thereon, or from the legal consequences of failure to employ such care.

E.    (1)    The limitation of liability provided in this Section shall apply to any lands or water bottoms owned, leased, or managed by the Department of Wildlife and Fisheries, regardless of the purposes for which the land or water bottoms are used, and whether they are used for recreational or nonrecreational purposes.

(2)(a) The limitation of liability provided in this Section shall apply to any lands, whether urban or rural, which are owned, leased, or managed as a public park by the state or any of its political subdivisions and which are used for recreational purposes.

3

(b)     The provision of supervision on any land managed as a public park by the state or any of its political subdivisions does not create any greater duty of care which may exist and does not create a duty of care or basis of liability for personal injury or for damage to personal property caused by the act or omission of any person responsible for security or supervision of park activities, except as provided in Subparagraph (E)(2)(d) of this Section.

(c)     For purposes of the limitation of liability afforded to parks pursuant to this Section this limitation does not apply to playground equipment or stands which are defective.

(d)     The limitation of liability as extended to parks in this Section shall not apply to intentional or grossly negligent acts by an employee of the public entity.

F.     The limitation of liability extended by this Section to the owner, lessee, or occupant of premises shall not be affected by the granting of a lease, right of use, or right of occupancy for any recreational purpose which may limit the use of the premises to any persons other than the entire public or by the posting of the premises so as to limit the use of the premises to persons other than the entire public.

With regard to the City of Lake Charles, the defendants' submission to this court establishes that Nelson Road Park, the ballfield where the plaintiff's fall occurred, is a public park and recreational complex available for public use. The defendants submitted the deposition of William F. Edwards, assistant director of the City's recreation department. His testimony establishes that the park has both soccer and baseball fields open to the public. As stated above, the plaintiff's deposition establishes that she was at Nelson Road Park on the date of the accident, May 26, 2002, to attend a baseball tournament. She explained that she paid a fee to attend the tournament when she entered the parking lot and that the tickets were being sold by USSSA baseball.

Considering these established facts, we conclude that La.R.S. 9:2795 is applicable to the City. Subsection (B)(1) states that "an owner of land, . . ., who permits with or without charge any person to use his land for recreational purposes

4

as herein defined does not thereby . . . (c) [i]ncur liability for any injury to person or property caused by any defect in the land regardless of whether naturally occurring or man-made." Thus, the trial court's conclusion that the origin of the depression was uncertain is of no consequence to the applicability of the statute in this situation.

Furthermore, the definition of "land," contained in La.R.S. 9:2795(A)(1), is sufficiently expansive so as to cover this park. Although the plaintiff suggests that this property is not covered by the statute as it is a developed park located in the city, we note that the statute was revised in 2001 to include "*urban* or rural land, roads, water, watercourses, private ways or buildings, structures, and machinery or equipment when attached to the realty." La.R.S. 9:2795(A)(1) (emphasis added). *See also* La.R.S. 9:2795(E)(2)(a), which specifically provides that the statute's limitation of liability "shall apply to any lands, whether urban or rural, which are owned, leased, or managed as a public park by the state or any of its political subdivisions and which are used for recreational purposes." The cases relied upon by plaintiff, which feature rural settings, are cases in which the injuries occurred prior to the revisions.[1] We make no determination as to the continuing relevance of those cases and recognize simply that the plain wording of La.R.S. 9:2795(A)(1) and (E)(2)(a) indicate that it is applicable to this property. *See* La.R.S. 1:4, which provides that: "When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." *See also Richard v. Hall*, 03-1488, p. 22 (La. 4/23/04), 874 So.2d 131, 148, citing La.Civ.Code art. 9 in its consideration of La.R.S. 9:2791 and La.R.S. 9:2795 for the proposition that "[w]hen a statute is clear and unambiguous and its application does not lead to absurd

---

[1] *See, e.g., Adams v. Hartford Accident & Indem. Co.*, 525 So.2d 1211 (La.App.1 Cir. 1988), wherein the first circuit denied the defendant's request for immunity for injury occurring to the plaintiff after a collision with a chain link fence at a ballpark. The first circuit reasoned that a chain link fence was not expected to be found in the "true outdoors." Again, we note that the statute was revised in 2001, and now includes not only rural lands, but those in urban settings as well.

consequences, the statute is applied as written, and no further interpretation may be made in search of legislative intent."

Furthermore, we conclude that the definition of "recreational purposes", contained in La.R.S. 9:2795(A)(3) includes the type of baseball tournament attended by the plaintiff. Subsection (A)(3) indicates that the term "recreational purposes" "includes but is not limited to any of the following, or any combination thereof: . . . summer and winter sports[.]" Certainly baseball must be considered to be a summer sport. Notwithstanding the fact that we conclude that this activity is included within the Subsection's listed recreational purposes, the list is expressly a nonexclusive one. Accordingly, the use of the park for this purpose fits within the statute.

Finally, we find no merit in the plaintiff's contention that immunity is not available to the City under the statute as it was a "commercial enterprise." *See* La.R.S. 9:2795(B)(1), which indicates that the immunity provision is inapplicable to "an owner of commercial recreational developments or facilities." The plaintiff stated that she paid a fee to attend the baseball tournament. She estimated that she was charged $3.00 while her children were charged $2.00. Again, she explained that the tickets were sold by USSSA, not the City. Furthermore, there is no evidence indicating that there was a fee charged by the City. Even if a fee was charged by the City, this does not indicate that it was operated as a commercial enterprise within the terms of the statute. Instead, La.R.S. 9:2795(B)(1) indicates immunity extends to an owner of land "who permits *with or without charge* any person to use his land for recreational purposes[.]" (Emphasis added.) Moreover, as indicated above, La.R.S. 9:2795(E)(2)(a) specifically addresses the applicability of immunity to a public park operated by a political subdivision of the state.

6

As we find that the City has demonstrated that the immunity provision of La.R.S. 9:2795 is applicable in this case, we conclude that the trial court erred in denying the motion for summary judgment in the City's favor.

The remaining question is whether summary judgment is appropriate in favor of USSSA. Based on the showing made, we find that summary judgment is not appropriate. The submission in favor of the motion for summary judgment, insofar as it is presented to this court, is deficient in evidence regarding USSSA's alleged sponsorship of the event, its use of the field at the ballpark, and the fees associated with the tournament. Mr. Edwards' testimony was general in nature regarding soccer associations' use of the park's fields and even less specific regarding the nature of baseball associations' use of the baseball fields. Accordingly, we make no determination regarding whether La.R.S. 9:2795 will be found to be ultimately applicable to USSSA. Rather, we find that based upon the showing made, the evidence is insufficient to do so. Accordingly, the trial court did not err in refusing to grant the motion for summary judgment in favor of USSSA.

## DECREE

For the foregoing reasons, the relators' writ application is granted in part and summary judgment is entered in favor of the City of Lake Charles and made peremptory. The plaintiff's petition is dismissed insofar as it related to this defendant. The relator's writ application is denied in part as it relates to the United States Specialty Sports Association and United National Insurance Company. Costs of this proceeding are assigned one-half to the plaintiff and one-half to the defendants, United States Specialty Sports Association and United National Insurance Company. This matter is remanded for further proceedings.

**WRIT GRANTED IN PART AND MADE PEREMPTORY; WRIT DENIED IN PART; REMANDED.**

SHELLY BENOIT

VERSUS

CITY OF LAKE CHARLES, UNITED STATES SPECIALTY SPORTS ASSOCIATION AND UNITED STATES NATIONAL INSURANCE COMPANY

THIBODEAUX, C.J., dissenting in part.

The trial judge was correct in denying the City's Motion for Summary Judgment. The majority errs by reversing the judgment of the trial court.

The purpose of La.R.S. 9:2795, as stated in 1975 La. Acts, No. 615, § 1, is "to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." Contrary to the majority's assertion, La.R.S. 9:2795(E)(2)(a) is not clear and unambiguous. That section refers to lands which are used for "recreational purposes." Section (A)(3), which defines "recreational purposes," is hardly a model of clarity when applied to one who, as in this case, is a spectator and not an active participant. As Judge Saunders aptly points out, section (A)(3) suggests an *active* participation in the activities listed in that section. Further, § 1 of Act No. 615 of 1975 clearly indicates the purpose of the recreational use statute is to limit an entity's liability toward "persons entering thereon for *such purposes*," i.e., recreational purposes. The majority fails to tell us what recreational purpose Ms. Benoit was engaging in as anticipated by the statute. Louisiana Revised Statutes

9:2795 does not on its face extend to a spectator like Ms. Benoit.  Because this recreational use statute impinges on common and statutorily-given rights to redress, it must be interpreted strictly and should not be extended beyond its obvious meaning. *Richard v. Hall*, 03-1488 (La. 4/23/04), 874 So.2d 131.  As *Richard v. Hall* further explains:

> When a law is susceptible of different meanings, 'it must be interpreted as having the meaning that best conforms to the purpose of the law.' . . . The statute must therefore be applied and interpreted in a manner that is logical and consistent with the presumed fair purpose and intention the legislature had in enacting it. . . . This is because the rules of statutory construction require that the general intent and fair purpose of the legislature in enacting it must, if possible, be given effect.

*Id*. at 149 (citations omitted).

What, then, was the presumed fair purpose and intention of the legislature in enacting La.R.S. 9:2795?  Our supreme court in *Keelen v. State, Department of Culture, Recreation, & Tourism*, 463 So.2d 1287, 1290 (La.1985) opined that "the legislature intended to confer immunity upon owners of undeveloped, nonresidential rural or semi-rural land areas."  A court must, therefore, consider the  characteristics of the property.  Further,

> . . . reference to the types of recreational activities specified in the statutes (hiking, boating, horseback riding, etc.) indicates that the legislature envisioned immunity for landowners who offer their property for recreation that can be pursued in the 'true outdoors.'  When the injury-causing condition or instrumentality is of the type normally encountered in the true outdoors, then the statutes provide immunity.  Conversely, when the instrumentality, whether found in an urban or rural locale, is of the type usually found in someone's backyard, then the statutes afford no protection.

*Id*.

2

*Keelen* concluded than an injury in a swimming pool in a state park was not subject to an immunity defense, even though swimming was an activity included in La.R.S. 9:2795. Rather, "the legislature intended to grant immunity for injuries incurred while swimming in lakes, rivers, ponds or other similar bodies of water." *Id*. at 1291. The supreme court in *Keelen* remanded for a determination of whether the state park was a nonresidential, unimproved rural or semi-rural property.

In an apparent response to *Keelen*, the legislature amended La.R.S. 9:2795 by Acts 2001, No. 1199, § 1 by inserting "urban or rural" preceding "land, roads, water" in Section (A)(1). Nonetheless, *Keelen* appears to be solid jurisprudential authority for it was cited in *Richard v. Hall*, 874 So.2d 131.

Following *Keelen*, the extension of immunity to the owner of property used for recreational purposes must comport with a three-part test: (1) the characteristics of the land must be examined—the land must be "open and undeveloped expanses of property;" (2) the recreational activity must be one that can be performed in the "true outdoors;" and, (3) the instrumentality causing the injury must be one typically found in the true outdoors and not in someone's back yard. *Deumite v. State*, 95-1263 (La. 2/28/96), 668 So.2d 727; *Deumite v. State*, 94-1210 (La.App. 1 Cir. 2/14/97), 692 So.2d 1127 (on remand), *writ denied*, 97-1409 (La. 9/26/97), 701 So.2d 984.

*Deumite*, 692 So.2d 1127, in an extensive examination of these factors, gave examples of locations which have not satisfied the first prong of the three-part test. For example, a playground within the city limits of Kenner, Louisiana in *Herbert v. City of Kenner*, 501 So.2d 901 (La.App. 5 Cir. 1987) and a recreational area within a populated city near a residential area of a town or city in *Landry v. Board of Levee Commissioners of Orleans Levee District*, 477 So.2d 672 (La.1985),

3

and *Ratcliff v. Town of Mandeville*, 502 So.2d 566 (La.1987) have not been immunized areas. The cases which have not fit within the third prong of *Keelen*'s three-part test include a dock located at a civic center complex within corporate city limits in *Brooks v. City of Lake Charles*, 488 So.2d 465 (La.App. 3 Cir. 1986) and a children's slide in a town park in *Wadsworth v. Town of Berwick*, 484 So.2d 762 (La.App. 1 Cir. 1986).

The location of the injury in this case and the status of the injured party as a spectator do not satisfy *Keelen*'s three-part test. The majority errs.

Moreover, the majority's analytical model is much too broad and turns the interpretation of this restrictive statute topsy-turvy. Louisiana Revised Statutes 9:2795 has to be construed strictly, not broadly. The majority errs again. If we were to extend the broad statutory construction used by the majority, a "public park" in Section (E)(2)(a) may be characterized as common property, subject to certain regulatory limitations by a municipal, parish, or state authority. *See e.g., Crick v. Ward Four Recreation Comm'n*, 256 So.2d 840 (La.App. 3 Cir. 1972). Consequently, anyone attending a recreational event at the Louisiana Superdome, at a ballpark on the campus of a state college, or at a municipal or parish-owned facility would be deprived of a right to sue that public entity in tort for an injury. Surely, this was not the intent of the legislature.

The majority has subverted the intent of the legislature and has done injury to legitimate tort victims with a result that does not withstand analytical analysis or jurisprudential precedent.

For the foregoing reasons, I respectfully dissent in part.

**NUMBER CW 05-89**

**COURT OF APPEAL, THIRD CIRCUIT**

**STATE OF LOUISIANA**

SHELLY BENOIT

VERSUS

CITY OF LAKE CHARLES

SAUNDERS, J. concurs in part, dissents in part, and assigns reasons.

After reviewing the language of La.R.S. 9:2795, its seems clear to me that this statute is inapplicable to the organized baseball underlying this action.

I note at the outset that laws that limit a tort victim's rights are to be construed strictly. *Monteville v. Terrebonne Parish Consol. Gov't.*, 567 So.2d 1097, 1100. With this strict construction as a backdrop, I consider the language describing the activities covered by La.R.S. 9:2795. Specifically, those activities are:

> hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized, or nonmotorized vehicle operation for recreation purposes, nature study, water skiing, ice skating, roller skating, roller blading, skate boarding, sledding, snowmobiling, snow skiing, summer and winter sports, or viewing or enjoying historical, archaeological, scenic, or scientific sites.

The majority states that "[c]ertainly baseball must be considered to be a summer sport." I disagree.

First, as noted above, this statute must be strictly construed. According to the majority position, our legislature felt that ice-skating and snowmobiling were worthy of specific notice while baseball, an activity so inexorably linked to our culture that

it is known as the national pastime, merely warrants inclusion via a catch all provision. La.R.S. 9:2795 does state that the list is illustrative; however, I find that if the legislature meant to include an activity as well known and recognized as organized baseball, they would have listed it. Indeed, organized baseball, football, and soccer are all notably absent from the statute leading me to believe that these activities are not covered by La.R.S. 9:2795.

If our national pastime was intended to fall under a phrase as generic as "summer or winter sports[,]" there is no need to specifically list any other activities. The legislature did, however, make the effort to specifically list other pastimes. According to the doctrine of *sui generis*, that list must be used as a guide when interpreting the catch all provision of the statute. One glaring difference between organized baseball and the other activities is organization itself. Not one amendment made to La.R.S. 9:2795 lists an organized sport. Not one activity specifically listed is an organized sport. Rather, they are individual endeavors performed at one's leisure. Organized baseball is a team sport that is played and practiced at predetermined times under the supervision of umpires responsible for maintaining order that is created by a specific set of rules.

This distinction is compelling and in harmony with the stated purpose of La.R.S. 9:2795, which is to make tracts of land available for recreational purposes. While organized baseball is a recreational activity, it is simply not logically related to any of the activities specifically mentioned by the legislature. Every other activity involves use of the land as it is found. Organized baseball is played in a manufactured environment. While skateboarders and the like may use manufactured benches or steps in the course of their activity, those benches and steps weren't

constructed for that purpose. They are simply things constructed for a practical purpose that someone might find useful in recreational pursuits. A baseball field, as well as football and soccer fields, is built for only one purpose. Furthermore, activities listed in La.R.S. 9:2795 are participatory by nature but the plaintiff here was a spectator.

Additionally, the fact that plaintiff went to the premises as a spectator appears to have been lost in the analysis. Even if organized baseball is considered to fall under "summer or winter sports[,]" an interpretation I disagree with, the fact remains that plaintiff did not engage in that activity. In addition to spectators, many people go to baseball parks with no intention of engaging in that sport. Babysitters take children, deliverymen deliver concessions and the like, vendors go to work in the concession stands and elected officials go to campaign. The majority opinion, however, makes no distinction between people who actually participate in the recreational activity and those who do not. The statute at issue, on the other hand, only lists participatory activities. I find that the dissimilarity between organized baseball and the other activities listed, the distinction between participatory and spectator activities, a strict construction of the statute, and the doctrine of *sui generis* prohibit the conclusion that plaintiff herein was somehow engaged in an activity covered by La.R.S. 9:2795.

Furthermore, the idea that baseball is a "summer sport" is totally without support. Summer begins on June 21 and ends on September 20. Professional baseball is played in the spring (spring training), in the summer, and ends with the fall classic (World Series). Collegiate baseball teams begin playing games in February (winter) and the season ends in late June with only 5-6 games played by 3-4 teams

during the summer. High school baseball begins in January (winter) and ends in May (spring). Little League baseball begins in March (spring) and ends in June (summer). How are summer sports defined? Are they sports that begin in the summer? In that case, baseball is not a summer sport on any level. If we go by when a sport ends, collegiate baseball is a summer sport but professional and high school are not. Finally, if they consist of any sport that is played at any time during the summer, professional baseball is a summer sport; collegiate baseball is a summer sport for 3-4 teams in the nation and high school baseball is not a summer sport. Indeed, baseball, unlike "summer and winter sports[,]" is not dependant upon weather conditions (i.e. swimming in the summer, skiing in the winter).

Finally, I note that the most prevalent four organized sports (baseball, football, soccer, and basketball) are not mentioned by La.R.S. 9:2795. This fact is compelling. I simply cannot conclude that the legislature either forgot to mention the most popular sports played in Louisiana or that they consciously decided that these activities did not warrant specific attention. The absence of baseball, football, soccer and basketball from La.R.S. 9:2795 must be considered as an intentional omission. Accordingly, I respectfully dissent insofar as the majority's opinion dismisses the action against the City of Lake Charles. I would affirm the trial court in its entirety.