NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CW 12-774 consolidated with CA 12-969

TAMMY SIMONEAUX

VERSUS

LAFAYETTE CONSOLIDATED GOVERNMENT, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2011-0925-F
HONORABLE GLENNON P. EVERETT, DISTRICT JUDGE

**********

BILLY HOWARD EZELL
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, Marc T. Amy, Billy Howard Ezell, and J. David Painter, Judges.


REVERSED IN PART AND SUMMARY JUDGMENT IN FAVOR OF SCOTT AREA TEAM SPORTS GRANTED; AFFIRMED IN PART.


Cooks, Judge, dissents in part and assigns written reasons.

Thibodeaux, Chief Judge, dissents for the reasons assigned by Judge Cooks.

**Patrick Craig Morrow, Sr.**
**Patrick Craig Morrow, Jr.**
**Taylor J. Bassett**
**Morrow, Morrow, Ryan & Bassett**
**P. O. Box 1787**
**Opelousas, LA 70570**
**(337) 948-4483**
**COUNSEL FOR PLAINTIFF/RESPONDENT:**
    **Tammy Simoneaux**

**David R. Rabalais**
**The Dill Firm**
**P. O. Box 3324**
**Lafayette, LA 70505**
**(337) 261-1408**
**COUNSEL FOR DEFENDANT/RESPONDENT:**
    **Acadiana Fun Jumps, Inc.**

**Gregory A. Koury**
**Andrew Paul Hill**
**Koury & Hill, LLC**
**910 Harding St.**
**Lafayette, LA 70503**
**(337) 993-1842**
**COUNSEL FOR DEFENDANT/APPLICANT:**
    **Scott Area Team Sports, Inc. (SATS)**

**EZELL, Judge.**

This appeal presents issues relating to the grant and the denial of motions for summary judgment in the trial court. At issue is the immunity provided by La.R.S. 9:2795, a recreational use immunity statute. The trial court found that the Lafayette Consolidated Government was entitled to immunity under the statute regarding a petition for damages filed by Tammy Simoneaux and granted its motion for summary judgment dismissing Ms. Simoneaux's claims against it. The trial court denied Scott Area Team Sports' motion for summary judgment.

## FACTS

The Lafayette Consolidated Government (LCG) operates youth sports activities in Lafayette Parish through seven volunteer youth associations known as neighborhood organizations. These neighborhood organizations are separate non-profit corporations. They administer the various youth programs in their particular geographic areas, including basketball, baseball, softball, volleyball, and football. The neighborhood organizations operate through volunteer boards elected among their membership, and each have their own particular bylaws. Each organization is responsible for the organization, coordination, and financial aspects of the events in its area.

Scott Area Team Sports (SATS) is the neighborhood organization responsible for operating the youth programs at Scott Park. On April 10, 2010, SATS hosted the kickoff weekend at Scott Park for the baseball/softball program. As part of the activities, a couple of fun jumps had been donated by Spacewalk of Acadiana, Inc., d/b/a Acadiana Fun Jumps. Also, for the first time, a dunk tank had been donated by Spacewalk as a fundraiser item. The dunk tank was originally the idea of Nicole Laporte, a SATS board member. Funds raised from the dunking booth were going to

help with the costs associated with Mrs. Laporte's son's attendance at Camp Bon Coeur, a cardiac camp for children located in the Lafayette area.

At some point during the day, Ms. Simoneaux was walking in a grassy walkway located between the baseball field and playground area. The walkway was behind a six-foot fence located behind the dunk tank. While walking in this grassy area a ball was thrown by a person, completely missing the dunk tank's target and its backstop. The ball went over the fence and struck Ms. Simoneaux just above the eye. As a result of the incident, Ms. Simoneaux claims she suffered severe injuries to her head, neck, back, hip, and knee, as well as other injuries.

Ms. Simoneaux filed a suit for damages against the LCG, SATS, and Acadiana Fun Jumps. Thereafter, the LCG filed a motion for summary judgment asserting that it was immune from Ms. Simoneaux's claims pursuant to the recreational use statutes. Subsequently, SATS also filed a motion for summary judgment. A hearing on both motions was held on May 21, 2012. The trial court granted the motion for summary judgment filed by LCG. The trial court took the motion for summary judgment filed by SATS under advisement. On May 23, 2012, the trial court denied the motion for summary judgment filed by SATS. A judgment incorporating both rulings was signed on June 7, 2012.

Ms. Simoneaux appealed the granting of the motion of summary judgment in favor of the LCG. SATS sought a supervisory writ of review regarding the denial of its motion for summary judgment. This court granted SATS' writ application for the sole purpose of consolidating it with Ms. Simoneaux's appeal.

## SUMMARY JUDGMENT

Our standard of review for the grant and denial of the motions of summary judgment is as follows:

Appellate courts review summary judgments *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Summary judgment shall be rendered if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. La.Code Civ. Pro. art. 966(B). The movants . . . have the burden of proof. La.Code Civ. Pro. art. 966(C)(2). However, if the movant will not bear the burden of proof at trial, its burden on the motion does not require it to negate all essential elements of the adverse party's action, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim. La.Code Civ. Pro. art. 966(C)(2). Thereafter, if the adverse party fails to produce factual support sufficient to establish they will be able to satisfy their evidentiary burden of proof at trial, there is no genuine issue of material fact. La.Code Civ. Pro. art. 966(C)(2). Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is "material" for summary judgment purposes can be seen only in light of the substantive law applicable to the case.

*Richard v. Hall*, 03-1488, pp. 4-5 (La. 4/23/04), 874 So.2d 131, 137 (case citations omitted).

Louisiana Revised Statutes 9:2795 provides "a limitation of liability for landowners, including the state and its political subdivisions, of property used for recreational purposes." *Souza v. Tammany Parish*, 11-2198, p. 4 (La.App. 1 Cir. 6/8/12), 93 So.3d 745, 747. However, the statute retains liability for (1) willful or malicious failure to warn against a dangerous condition, use, structure, or activity; (2) playground equipment or stands which are defective; and (3) intentional or grossly negligent acts by an employee of the public entity. La.R.S. 9:2795(B)(1), (E)(c), and (E)(d). We are also mindful that the recreational use statutes "are in derogation of [a] common or natural right and, therefore, are to be strictly interpreted, and must not be extended beyond their obvious meaning." *Richard*, 874 So.2d 148. Ms. Simoneaux was at Scott Park to attend the kickoff weekend for baseball/softball activities, clearly a recreational activity covered by La.R.S. 9:2795. *Benoit v. City of Lake Charles*, 05-89 (La.App. 3 Cir. 7/20/05), 907 So.2d 931, *writ denied*, 05-2154 (La. 3/17/06), 925

3

So.2d 539; *DeLafosse v. Village of Pine Prairie*, 08-693 (La.App. 3 Cir. 12/10/08), 998 So.2d 1248, *writ denied*, 09-74 (La. 2/4/09), 999 So.2d 766.

The issue in this case is whether the action of the SATS board members in setting up the dunk tank was intentionally or grossly negligent. La.R.S. 9:2795(E)(d). The trial court specifically ruled that SATS "directed the placement of the dunk tank. By doing so one could find that it knew, or even presume that it was aware of the alleged dangerous (negligent) placement created by it. Failure to warn of this dangerous condition may bring it outside the protection afforded by the immunity statute."

Ms. Simoneaux first argues that the LCG retained sufficient control over SATS' activities to render it vicariously liable for the actions of SATS employees under La.Civ.Code art. 2320. She next claims that the actions or inactions of SATS and the LCG employees constitute "grossly negligent acts" or "willful failure to warn" of an unreasonably dangerous condition so that they are not entitled to the immunity provided by La.R.S. 9:2795. Lastly, she argues that even if the actions of the LCG and SATS employees were neither willful nor grossly negligent, the limitations of liability contained in La.R.S. 9:2795 do not protect the LCG or SATS from the specific acts of its employees.

SATS argues that it established that it was entitled to the protections of La.R.S. 9:2795 and that Ms. Simoneaux has offered no evidence of gross negligence or a willful or malicious failure to warn of a dangerous condition. We will first address SATS' argument.

Gross Negligence or Willful or Malicious Failure to Warn

Ms. Simoneaux does not dispute that SATS would be entitled to immunity under La.R.S. 9:2795 but argues that its action in the placement of the dunk tank

4

directly in front of a heavily traversed walkway was grossly negligent. The burden was on Ms. Simoneaux to establish that SATS was grossly negligent. *DeLafosse*, 998 So.2d 1248; *Souza*, 93 So.3d 745.

This court has previously discussed gross negligence and willful or malicious acts as they pertain to La.R.S. 9:2795. In regard to the duty to warn of a dangerous condition under the recreational use statute, a failure to warn of a dangerous condition connotes a conscious course of action and is deemed willful or malicious when action is knowingly taken or not taken, which would likely cause injury, with conscious indifference to consequences thereof. *DeLafosse*, 998 So.2d 1248.

In *Ables v. Minvielle*, 09-364, pp.4-5 (La.App. 3 Cir. 10/7/09), 22 So.3d 1129, 1132-33(alterations in original), this court further expounded on the meaning of gross negligence quoting *Roton v. Falconer*, 42,452, pp. 9-10 (La.App. 2 Cir. 10/3/07), 966 So.2d 790, 795, *writ denied*, 07-2165 (La. 1/7/08), 973 So.2d 924:

> Gross negligence has a well-defined legal meaning distinctly separate, and different, from ordinary negligence. Gross negligence has been defined as the "want of even slight care and diligence" and the "want of that diligence which even careless men are accustomed to exercise." It has also been termed the "entire absence of care" and the "utter disregard of the dictates of prudence, amounting to complete neglect of the rights of others." Additionally, gross negligence has been described as an "extreme departure from ordinary care or the want of even scant care." [Internal citations omitted.] *Rabalais v. Nash*, 2006–0999 (La.3/9/07), 952 So.2d 653; *Foshee v. Louisiana Farm Bureau Casualty Insurance Co.*, 41,842 (La.App. 2d Cir.1/31/07), 948 So.2d 1171, *writ denied*, 2007–0483 (La.4/20/07), 954 So.2d 169.
>
> [Louisiana Revised Statutes] 9:2800.4 does not define "intentional act." We find useful the definition given for the term by the Louisiana Supreme Court when considering the intentional act exception to the exclusivity provision of the Workers' Compensation Act. In *White v. Monsanto Company*, 585 So.2d 1205 (La.1991), the court stated:

5

The meaning of "intent" is that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to that result. Thus, intent has reference to the consequences of an act rather than to the act itself. Only where the actor entertained a desire to bring about the consequences that followed or where the actor believed that the result was substantially certain to follow has an act been characterized as intentional.

"Substantially certain to follow" requires more than a reasonable probability that an injury will occur and "certain" has been defined to mean "inevitable" or "incapable of failing." Further, mere knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct by an employer constitute intentional wrongdoing. *Reeves v. Structural Preservation Systems*, 1998–1795 (La.3/12/99), 731 So.2d 208.

SATS had never used a dunk tank at the kickoff ceremonies before. Tony Napolitano, the president of SATS, testified that he and Kevin Domingue, a board member, set up the dunk tank. The dunk tank, along with two fun jumps, was set up on the baseball field. Mr. Napolitano stated that, although the fence behind home plate was taller than the fence in the outfield, he made a conscious decision not to set it up there. Mr. Napolitano was concerned that it was a dirt area and that it might get muddy and slippery as water splashed from the tank. He thought it would create a hazard for someone to fall in the mud. Mr. Napolitano stated that the dunk tank had a backstop itself and thought that the six-foot fence in the outfield in addition to the backstop on the dunk tank would be sufficient to stop errant balls. The walkway that Ms. Simoneaux was using was located outside the baseball field, behind the six-foot fence.

6

We find no evidence that SATS' decision to place the dunk tank in the area that it chose amounted to gross negligence. Mr. Napolitano specifically analyzed the area and tried to place the tank in the position he thought best to avoid any injuries. Clearly, Mr. Napolitano was seeking to avoid injuries and there is no indication that he desired or anticipated that anyone would get hurt.

Therefore, based on our de novo review of the record, we find that the trial court erred in finding that there was a question of material fact as to whether SATS was grossly negligent. Ms. Simoneaux has failed to establish any intentional or grossly negligent acts on behalf of SATS.

Blanket Tort Immunity

Ms. Simoneaux further argues that La.R.S. 9:2795 does not protect landowners from liability for specific acts of negligence not relating to their capacity as a landowner. She claims that her claim is based on the negligent actions or inactions of the employees in setting up the dunk tank in the location it chose and not a defect in the land itself, therefore, La.R.S. 9:2795's immunity protection is inapplicable.

Louisiana Revised Statutes 9:2795(B)(1) provides immunity for recreational purposes as follows:

> Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:
>
> (a) Extend any assurance that the premises are safe for any purposes.
>
> (b) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.
>
> (c) Incur liability for any injury to person or property caused by any defect in the land regardless of whether naturally occurring or man-made.

In support of her argument, Ms. Simoneaux cites *Cooper v. Brownlow*, 491 So.2d 693 (La.App. 5 Cir. 1986). In *Cooper*, a minor was injured by a firecracker thrown into a bonfire. The fifth circuit held that the landowner immunity statutes were not applicable to the Jefferson Levee District Board's allegedly negligent failure to properly supervise and monitor crowd activities who had gathered to watch a bonfire, which it knew or should have known would be dangerously conducted upon the levee. The court held that La.R.S. 9:2791 and 9:2795 were inapplicable when the alleged negligence did not arise out of the ownership or use of the land. However, more importantly in Cooper, La.R.S. 38:1480 specifically imposed a responsibility on the levee police officers to maintain order and exercise general police power on and off the levees in that district. The fifth circuit reversed a summary judgment because the levee board was negligent for granting a permit for the bonfire and for lack of crowd control.

In *Johnson v. Lloyd's of London*, 26,813 (La.App. 2 Cir. 4/5/95), 653 So.2d 226, *writ denied*, 95-1114 (La. 6/23/95), 656 So.2d 1016, the plaintiff filed suit against a hunting club for injuries he sustained when he fell from his own deer stand. The plaintiff alleged that the club voluntarily assumed a duty of protection that it then failed to perform with due care, and that such a voluntary assumption of a duty takes the case out of the scope of the recreational use statutes.

The second circuit reviewed three decisions from other jurisdictions which interpreted very similar statutes: *Palmer v. U.S.*, 945 F.2d 1134 (9th Cir. 1991); *Klepper v. City of Milford*, 825 F.2d 1440 (10th Cir. 1987); and *Weaver v. United States*, 809 F.Supp. 527 (E.D. Mich. 1992). Agreeing with the holdings and rationales in those cases, the court in *Johnson* concluded that Louisiana's recreational use statutes are very similar in both its purpose and its provisions and that our law

8

provides a landowner with immunity from simple negligence although immunity from grossly negligent acts is not available.

We also observe that due to subsequent amendments, La.R.S. 9:2795(E)(2)(c) now also specifically eliminates immunity to owners of parks when there is defective playground equipment or stands. However, a further amendment to La.R.S. 9:2795 now specifically provides that there is no duty of care or liability for personal injury or damage to personal property by those charged with security or supervision unless the acts were intentional or grossly negligent. Louisiana Revised Statutes 9:2795(E)(2)(b) now provides:

> The provision of supervision on any land managed as a public park by the state or any of its political subdivisions does not create any greater duty of care which may exist and does not create a duty of care or basis of liability for personal injury or for damage to personal property caused by the act or omission of any person responsible for security or supervision of park activities, except as provided in Subparagraph (E)(2)(d) of this Section.

Louisiana Revised Statutes 9:2795(E)(2)(d) provides: "The limitation of liability as extended to parks in this Section shall not apply to intentional or grossly negligent acts by an employee of the public entity."

As previously discussed, there are no facts or evidence indicating an intentional or grossly negligent act by any SATS employee in the setting up of the dunk tank or operation of the dunk tank. Ms. Simoneaux's allegation that the placement of the dunk tank is what caused her injury is one of simple negligence protected by the immunity granted by La.R.S. 9:2795.

Since we find that both SATS and the LCG are entitled to immunity under La.R.S. 9:2795 for the claims against them by Ms. Simoneaux, it is not necessary for us discuss the issue raised by Ms. Simoneaux concerning the LCG's vicarious liability for the actions of SATS employees.

For these reasons, we find that the trial court erred in denying the motion for summary judgment filed by Scott Area Team Sports. The writ is granted. The judgment denying the motion for summary judgment in favor of Scott Area Team Sports is reversed, and summary judgment is entered in favor of Scott Area Team Sports. The claims of Tammy Simoneaux against Scott Area Team Sports are dismissed with full prejudice and at her costs.

We also find that the trial court was correct in granting the Lafayette Consolidated Government's motion for summary judgment and affirm the trial court summary judgment in its favor. Costs of this appeal are assessed to Tammy Simoneaux.

**REVERSED IN PART AND SUMMARY JUDGMENT IN FAVOR OF SCOTT AREA TEAM SPORTS GRANTED; AFFIRMED IN PART.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules−Courts of Appeal. Rule 2-16.3.

# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

## CW 12-774 consolidated with CA 12-969

TAMMY SIMONEAUX

VERSUS

LAFAYETTE CONSOLIDATED GOVERNMENT, ET AL.

**COOKS, J., dissenting in part**.

I agree with the majority opinion's affirmance of the grant of summary judgment in favor of Lafayette Consolidated Government (LCG). LCG was entitled to immunity under La.R.S. 9:2795 for the claims against it filed by Ms. Simoneaux.

However, I disagree with the majority's reversal of the trial court's denial of SATS' motion for summary judgment, and grant of summary judgment in favor of SATS. The trial court found, at a minimum, there were genuine issues of material fact as to whether SATS was willful or grossly negligent. The trial court specifically discussed the conduct of SATS employees on the day of the incident and found there were material questions as to whether there was an extreme lack of care in setting up the dunk tank. The trial court stated as follows:

> Well, but - - and, again, this is just a little different because SATS actually placed it. . . . And in doing so, I believe they are presumed to know of any defects in doing so. If they are presumed to know that, then the placement, then that seems at least to make it a willful act that does get them out of the statute.

The trial court noted the immunity provided under La.R.S. 9:2795(B)(1) does not apply if there is a willful or malicious failure to warn of a dangerous condition, use, structure or activity. It is undisputed that SATS representatives were solely responsible for the placement of the tank. There was testimony that the dunk tank was set up in front of a grassy area that was being used as a walkway, and that the

fence between the dunk tank and walkway was only six feet high. The president of SATS, Tony Napolitano, acknowledged there was nothing that prevented him from putting up barricades on the grassy walkway behind the dunk tank to prevent people from walking behind the throwing area. Frank Wittenberg, a former Recreation Coordinator and current Athletic Program Supervisor with LCG, testified that SATS should "probably have anticipated based on where they set up, that [a person being struck by an errant throw from the dunk tank] could happen." All this presented clear issues of material fact as to SATS possible willful or grossly negligent behavior that would preclude it from being covered by the immunity provided in La.R.S. 9:2795(B)(1).

The majority opinion examines the testimony of SATS president, Mr. Napolitano and concludes he was "[c]learly . . . seeking to avoid injuries and there is no indication that he desired or anticipated that anyone could get hurt." This factual conclusion is not one appropriate for summary judgment. Further, it ignores conflicting testimony from others, including Mr. Wittenberg (an employee of defendant LCG), who specifically stated SATS should "probably have anticipated based on where they set up, that [the injury in question] could happen." Therefore, I find summary judgment in favor of SATS should not have been granted.

I also have serious misgivings about SATS' right to shield itself from liability by using the immunity provided by La.R.S. 9:2795(B)(1). That statute provides "a limitation of liability for landowners, including the state and its political subdivisions, of property used for recreational purposes." While LCG would clearly be covered under this statute, I have difficulty placing SATS under its umbrella. SATS is not the landowner, nor a political subdivision of the state as the statute sets out. The wording in the statute references protection from traditional landowner liability under Louisiana law, not some form of blanket tort

immunity to every entity imaginable that leases or otherwise secures the right to use public property.

Therefore, I dissent from the majority's reversal of the trial court's denial of SATS' motion for summary judgment, and its grant of summary judgment in favor of SATS. Finding no error in the trial court's denial of SATS' motion for summary judgment, I would deny SATS' writ.