966 So.2d 790 (2007)
Chris ROTON, Plaintiff-Appellant,
v.
VERNON E. FAULCONER, INC., Defendant-Appellee.
Edith Reneé Roton, Individually and as Natural Tutrix of her Minor Son, Michael Lee Roton, Plaintiff-Appellant,
v.
Vernon E. Faulconer, Inc. and Tommy D. Stewart, Defendants-Appellees.
Chris Roton, Plaintiff-Appellant,
v.
T & R Stewart, Inc., Defendant-Appellee.
Nos. 42,452-CA to 42,454-CA.
Court of Appeal of Louisiana, Second Circuit.
October 3, 2007.
*791 Houck & Riggle, L.L.C. by Tracy W. Houck, Ruston, Ronald L. Riggle, for Appellant, Edith Reneé Roton.
Dollar Laird, L.L.P. by Johnny E. Dollar, Monroe, for Appellant, Chris Roton.
Hudson, Potts & Bernstein, L.L.P., by Gordon L. James, Monroe, Donald H. Zeigler, III, for Appellees, Tommy D. Stewart & T & R Stewart, Inc.
Mayer, Smith & Roberts, L.L.P., by Caldwell Roberts, Jr., Shreveport, for Appellee, Vernon E. Faulconer, Inc.
Before BROWN, WILLIAMS and GASKINS, JJ.
GASKINS, J.
The parents of a 15-year-old boy, who was killed while trespassing on a pumping unit, appeal from the granting of summary judgment in favor of the operators of the well. We affirm.

FACTS
On June 25, 2003, Michael Roton and Colby Moon went by four-wheeler to a pumping unit on property near McCullen Road in rural Lincoln Parish, Louisiana. In the weeks since the end of the school year, the boys had devised a game whereby they removed metal rods from the fence surrounding the pumping unit and placed them in holes on the counterweight. They then held onto the rods or pins in an effort to be lifted or slung in the air when the counterweight moved upward. On this day, Michael took a metal bar and balanced it on top of a pin the boys had stuck in the counterweight. As he was raised in the air, he let go of one end and fell. Michael was then struck in the torso by the counterweight. The boys returned to the home of Michael's father. Prior to their arrival there, they agreed to lie that Michael's injures were sustained in a four-wheeler accident. Michael was transported by ambulance to a hospital where he died of internal injuries. When questioned by the police after Michael's death, Colby *792 told the truth about how Michael was injured.
In August 2003, Michael's father, Chris Roton, filed a wrongful death and survival action against Vernon E. Faulconer, Inc., a Texas corporation which allegedly owned and operated the oil well site ("Faulconer"). He alleged negligence, strict liability, and attractive nuisance. Although removed to federal court on the defendant's motion due to diversity jurisdiction, the case was eventually remanded back to state court following the addition of a Louisiana defendant. In April 2004, the father filed an amended complaint adding Tommy D. Stewart, a Louisiana resident, as a defendant. Stewart was alleged to have entered into an operating agreement with Faulconer, which covered the well site at issue.
In April 2004, Edith Reneé Roton, Michael's mother, filed suit, individually and as Michael's natural tutrix, in state court against Faulconer and Stewart. She also alleged negligence, strict liability, and attractive nuisance. In June 2004, Stewart filed an answer in which he stated that T & R Stewart, Inc. entered into the operating agreement with Faulconer. He also asserted that Michael was solely at fault in trespassing on the well site, vandalizing the fence surrounding the well site, climbing over the surrounding fence, and playing on the pumping unit despite the posted danger signs. Stewart filed a similar answer in the father's lawsuit.
In June 2004, the father filed suit in state court against T & R Stewart, Inc., alleging the same basis as his prior suit. In its answer, T & R Stewart, Inc., again stated that Michael was solely at fault.
In November 2004, the parties jointly moved to consolidate the three cases. The motion was granted.
In June 2005, Faulconer filed a motion for summary judgment. It asserted that a guardrail was in front of the counterweight to prevent accidental contact with it and that warning signs were on the guardrail. It further contended that the 15-year-old decedent trespassed on the pumping unit and constructed an unstable hand grip in order to be lifted in the air while playing on the unit. Faulconer asserted that the boy knew that he had engaged in reckless behavior, as demonstrated by the fact that he and his friend fabricated a false story about how he was injured. In support of the motion, Faulconer attached the depositions of 14-year-old Colby Moon, who was present when the decedent was injured, and Heath Mullins, the decedent's 14-year-old stepbrother, who recounted playing at the accident site with Michael and Colby a week or two before the fatal incident. Heath indicated that on that occasion, the boys hid the four-wheeler so no one would see them near the pumping unit. That day Heath fell and hit the fence; after that, he never played on the unit again.
Also submitted in support of Faulconer's motion for summary judgment was the affidavit of William Griffin, a registered professional engineer who owned and operated an oil and gas consulting business. He stated that the pumping unit at issue here was equipped with a three-rail guardrail, which exceeded standard industry practice and protected against accidental contact with rotating counterweights. The pumping unit also had conspicuously displayed warning signs. Griffin stated that the nearest residence to the well site was 450 feet away and that the pumping unit was 208 feet from the road.
In July 2005, Tommy D. Stewart and T & R Stewart, Inc., also filed a motion for summary judgment. Stewart asserted that, operating as T & R Stewart, Inc., he *793 was an independent contractor providing periodic maintenance service for Faulconer; as such, he was not responsible for the design, safety or signage of the oil well equipment. He further contended that the accident was caused by the decedent's reckless and grossly negligent conduct. These defendants adopted the arguments and facts set forth by Faulconer in its motion for summary judgment. They also attached excerpts of Heath Mullins' deposition testimony in which he admitted that he fell and was injured the first time he played on the pumping unit, that he never did it again, that Michael witnessed his accident, and that he and the other boys hid when they saw someone drive by the well. They also presented deposition excerpts from the decedent's brother Christopher in which he stated that a chainlink fence would not have been a deterrent to him accessing the pumping unit unless it had razor wire on the top. Christopher said he never paid attention to the signs on the pumping unit until after his brother died. The decedent's mother stated in her deposition that Michael lied about how he was injured because he knew he would be in trouble if his father found out that he had been on the pumping unit.
In April 2006, the decedent's father filed an opposition to the motions for summary judgment. In support of his opposition, he filed an affidavit and report from Edward Ziegler, a consulting petroleum engineer and safety consultant. According to Ziegler, it is well known in the oil and gas industry that children in rural Louisiana play in the fields and woods near their homes and that being struck by moving equipment is a recognized hazard. Also, a properly designed, constructed and installed guard on a pumping unit cannot be moved by young people. Ziegler also stated that the signs in place were inadequate; according to him, signs must describe the hazard, the potential harm, and a way to avoid the hazard or potential harm. He also offered his opinion that the decedent did not contribute to his injury because he was attracted to equipment which was not properly or reasonably guarded.
The decedent's mother likewise filed an opposition to the motions for summary judgment in which she relied upon Ziegler's testimony. She argued that Ziegler's affidavit showed that the defendants failed to comply with industry standards in safeguarding the pumping unit. She claimed that the pumping unit was unreasonably dangerous, that the defendants failed to properly guard and enclose it, and that the nature of the pumping unit made it "peculiarly attractive" to her son and boys his age. She also attached the depositions of Christopher Roton, Jr. and Colby Moon.
In July 2006, the trial court issued written reasons for ruling and granted the motions for summary judgment. The court relied upon Robertson v. State ex rel. Department of Planning and Control, 32,309 (La.App.2d Cir.12/10/99), 747 So.2d 1276, writ denied, XXXX-XXXX (La.2/25/00), 755 So.2d 882, in which a Louisiana Tech student died after falling from the roof over the university natatorium. The court found no distinction between a college student climbing a roof and a 15-year-old boy trespassing on another person's property and altering the pumping unit by removing a steel bar to assist in his ride. The court distinguished the present case from Killough v. Bituminous Casualty Corp., 28,329 (La.App.2d Cir.5/8/96), 674 So.2d 1091, in which a nine-year-old boy was injured on an oil well that the well owner knew was located 129 feet from a residence and near a school and playground. Here the nearest residence was 450 feet away and there was no school or playground in the vicinity. The court considered the actions taken by the decedent and his friends to *794 conceal their activities, including lying about how he was injured, and determined that it appeared that no reasonable preventive measures would have deterred the boys from "their adventure." The court held that the well operator did not have a duty to completely enclose, fence and lock all pumping stations. Furthermore, the court found no additional duty owed to trespassers who make intentional recreational contact with the pumping mechanism. As to strict liability, the trial court found no defect in the pumping station and no knowledge by the defendants of the boys' trespassing and dangerous conduct. On the issue of attractive nuisance, the trial court ruled that it was inapplicable to the 15-year-old decedent. Judgment in conformity with the opinion was signed on July 25, 2006.
The parents appealed. In April 2007, they and Faulconer filed a joint motion to dismiss the appeal with prejudice as to Faulconer. The motion was granted by this court in May 2007.

SUMMARY JUDGMENT

Law
Appellate courts review summary judgments de novo under the same criteria that govern a district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991); Costello v. Hardy, XXXX-XXXX (La.1/21/04), 864 So.2d 129. A court must grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). Summary judgment procedure is favored and is designed to secure the just, speedy and inexpensive determination of actions. La. C.C.P. art. 966(A)(2); Mosley v. Temple Baptist Church of Ruston, Louisiana, Inc., 40,546 (La.App.2d Cir.1/25/06), 920 So.2d 355.
Initially, the movant bears the burden of proof. La. C.C.P. art. 966(C)(2). If the movant successfully meets this burden, then the burden shifts to the other party to present factual support adequate to establish that he/she will be able to satisfy the evidentiary burden at trial. If the other party fails to meet this burden, there is no genuine issue of material fact, and the movant is entitled to summary judgment as a matter of law. Supreme Services and Specialty Co., Inc. v. Sonny Greer, Inc., XXXX-XXXX (La.5/22/07), 958 So.2d 634.

Discussion
Since Faulconer is no longer a party to this matter, we consider only the liability of Stewart and T & R Stewart, Inc. ("Stewart").
According to the terms of the operating agreement between Stewart and Faulconer, Stewart agreed to: (1) operate the well in a good and workmanlike manner and in accordance with accepted oil producing industry standards and practice; (2) pay promptly all just claims for materials, equipment, etc.; (3) pay all claims for damage to property in any manner arising directly [or] indirectly from Stewart's work, limited to acts of negligence by Stewart or its employees; (4) comply with all federal, state and municipal laws, rules and regulations applicable to Stewart, Stewart's business, equipment or personnel; (5) obtain and pay for all necessary permits and comply with all applicable laws and regulations in qualifying for and in performing the work; and (6) conduct its activities in a lawful way and to comply with laws and governmental regulations *795 applicable to Stewart, Stewart's business or personnel.
Stewart argues that if it is deemed to have had the garde of the pumping unit under the terms of its agreement with Faulconer, it is entitled to the protection of La. R.S. 9:2800.4. We agree. This statute provides, in relevant part:
A. As used in this Section:
(1) "Owner" means the owner and also a tenant, lessee, occupant, or person in control of any farm or forest land or in control of any oil, gas, or mineral property.
. . .
(4) "Oil, gas, or mineral property" shall mean any land leased for the development and production of oil, gas, or minerals.
. . .
E. An owner of oil, gas, or mineral property shall not be liable to any person who unlawfully enters upon his oil, gas, or mineral property, for damages for any injury, death, or loss which occurs while on the oil, gas, or mineral property of the owner, unless such damage, injury, or death was caused by the intentional act or gross negligence of the owner. [Emphasis added.]
Thus, in order to be liable for the death of the trespassing decedent, Stewart must have been grossly negligent or committed an intentional act causing the death.
Gross negligence has a well-defined legal meaning distinctly separate, and different, from ordinary negligence. Gross negligence has been defined as the "want of even slight care and diligence" and the "want of that diligence which even careless men are accustomed to exercise." It has also been termed the "entire absence of care" and the "utter disregard of the dictates of prudence, amounting to complete neglect of the rights of others." Additionally, gross negligence has been described as an "extreme departure from ordinary care or the want of even scant care." [Internal citations omitted.] Rabalais v. Nash, XXXX-XXXX (La.3/9/07), 952 So.2d 653; Foshee v. Louisiana Farm Bureau Casualty Insurance Co., 41,842 (La.App.2d Cir.1/31/07), 948 So.2d 1171, writ denied, XXXX-XXXX (La.4/20/07), 954 So.2d 169.
La. R.S. 9:2800.4 does not define "intentional act." We find useful the definition given for the term by the Louisiana Supreme Court when considering the intentional act exception to the exclusivity provision of the Workers' Compensation Act. In White v. Monsanto Company, 585 So.2d 1205 (La.1991), the court stated:
The meaning of "intent" is that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to that result. Thus, intent has reference to the consequences of an act rather than to the act itself. Only where the actor entertained a desire to bring about the consequences that followed or where the actor believed that the result was substantially certain to follow has an act been characterized as intentional.
"Substantially certain to follow" requires more than a reasonable probability that an injury will occur and "certain" has been defined to mean "inevitable" or "incapable of failing." Further, mere knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct by an employer constitute intentional wrongdoing. Reeves v. Structural Preservation Systems, XXXX-XXXX (La.3/12/99), 731 So.2d 208.
*796 According to the uncontradicted evidence, the pumping unit was located in a heavily wooded rural area. The three nearest homes were 450 feet north, 780 feet east, and 1,170 feet west of the well site. The pumping unit was 208 feet from a nearby road. It was equipped with a three-rail guardrail.[1] There were several warning signs attached to the guardrails. The word "DANGER" was displayed in white letters on a red background. The sign further cautioned that "this equipment starts automatically at any time."
The record is devoid of evidence that Stewart was grossly negligent or committed an intentional act causing Michael's death. A fence and warning signs were in place at the accident site; both of these measures were calculated to alert potential trespassers to stay away from the equipment. In the instant case, these reasonable measures were simply ignored by intelligent teenagers in pursuit of summer entertainment.
We note that the plaintiffs sought application of the attractive nuisance doctrine. Like the trial court, we find that this doctrine  which applies to "children of tender years"  is not available in the instant case due to the 15-year-old decedent's age. See Racine v. Moon's Towing, 2001-2837 (La.5/14/02), 817 So.2d 21, in which the supreme court refused to apply the attractive nuisance doctrine to a situation involving boys who were fourteen and fifteen years old.
We find that summary judgment in favor of Stewart was appropriate under the circumstances presented in this case.

CONCLUSION
The judgment of the trial court is affirmed. Costs of this appeal are assessed to the appellants, Chris Roton and Edith Reneé Roton.
AFFIRMED.
NOTES
[1] There is a question as to whether the fence was fully enclosed. In his deposition, Colby indicated that an end of it was open. However, Heath testified that the fence was not open at one end and that they normally had to climb over the fence to get close to the pumping unit. We do not believe that this discrepancy is sufficient to defeat summary judgment.