WILLIAMS, J.
 

 | We granted this application for supervisory review filed by the defendants, Kelly Oil & Gas Company, Inc. and Brammer Engineering, Inc., to determine the correctness of the district court’s ruling denying the defendants’ motion for summary judgment. Finding error in the trial court’s ruling, we grant the defendants’ writ application and reverse.
 

 FACTS
 

 On May 27, 2001, at approximately 4:00 a.m., the decedent, Matthew Wall (“Matt”), plaintiffs, Danielle Langwasser (“Danielle”) and Marcus McKinney (“Marcus”), along with Kyle Langwasser (“Kyle”), La-Jarvis Bridges (“LaJarvis”) and Sherry McLemore (“Sherry”), entered onto an oil, gas and mineral drilling site located in a very rural part of Webster Parish.
 
 [1]
 
 The access road to the property was equipped with a gate, but at the time of the incident, the gate was unlocked and open. According to defendants, there was a sign beside the gate which read, “STOP. NO UNAUTHORIZED PERSONNEL BEYOND THIS POINT. HIGH PRESSURE NATURAL GAS AND FLAMMABLE LIQUID.” The record supports the defendants’ contention that there was another sign on the gate itself, which read, “DANGER. NO TRESPASSING. KEEP OUT.” The evidence indicates that the sign on the gate would not have been visible if the gate was open.
 

 The six teenagers entered the property in two separate vehicles utilizing a service road which was open from the main access road. They entered the premises and parked their vehicles approximately 50 to 100 feet [2from a battery of oil tanks. Everyone except LaJarvis got out of the vehicles to “hang out.” The teens stood around the vehicles, talking, listening to music, smoking cigarettes and/or “Black and Mild” cigars and, according to Danielle’s deposition testimony, drinking beer.
 
 [2]
 

 At some point, Matt, Marcus and Danielle decided to climb atop one of the tanks “to watch the sunrise.” The three teens climbed a set of steps to a catwalk adjacent to the tanks. The warning instructions, “NO OPEN FLAME” and “NO SMOKING,” were stenciled on the oil tanks. During their depositions, the teenagers testified that Danielle and Marcus remained on the catwalk, but Matt climbed on top of the tanks. Kyle testified that Matt jumped “from tank to tank, you know just hopping from tank to tank.” Danielle also testified that Matt “was on the tanks going from tank to tank.” Danielle admitted that at some point, she joined Matt on the second tank. She was carrying a pack of cigarettes and a lighter.
 

 After a short while, Danielle decided to climb down from the tank. As Danielle was climbing down, the tank where Wall was standing exploded. Kyle ran to Danielle, who was hanging from the catwalk, helped
 
 *1073
 
 her down and extinguished flames from her head and shirt. Kyle then assisted Marcus, who was completely engulfed in flames. In the meantime, the other two tanks exploded. The teenagers were unable to find Matt. They then left the scene to seek medical attention for Marcus and Danielle. Apparently, LaJarvis, who had been asleep in his vehicle, remained at the scene to attempt to find Matt. Law enforcement authorities responding to fithe explosion located Matt’s body approximately 90-100 feet away from the tank; he was pronounced dead at the scene.
 
 [3]
 
 Investigators found various items of debris, including a cigarette lighter, a cigarette butt and a plastic cigar filter in front of one of the tanks.
 

 The investigators interviewed the teenagers shortly after the accident. Kyle initially stated that he had seen Matt smoking while on top of the oil tank. However, Kyle later recanted that statement, explaining that he had seen Matt smoking while Matt was on the ground near the oil tanks and he had only assumed that Matt was smoking while on top of the tank. Some time after the explosion, Brammer employees found a variety of beer bottles and tobacco or smoking-related items at the site.
 

 Plaintiffs, James and Alice Wall (Matt’s parents), Marcus and Danielle, filed a joint petition against defendants, Kelly Oil & Gas Co., Inc., Brammer Engineering, Inc., Brammer-Keystone Energy, A Partnership, Brammer Production Co. and Bram-mer Production 1993, A Limited Liability Co. (collectively “Kelly and Brammer”), seeking monetary damages for their personal injuries arising from the explosion.
 
 [4]
 
 At the time of the incident, Kelly was the designated operator of the oil well; Bram-mer was the contract operator pursuant to a contract operating agreement.
 

 Following extensive discovery, the defendants moved for summary judgment. The district court granted partial summary judgment in favor of the defendants, ruling that gross negligence is the applicable standard of |4care in this matter. However, the court denied summary judgment on all other issues, stating:
 

 It does appear to the Court that there are genuine issues of material fact concerning the question of foreseeability. There is considerable testimony from various individuals that trash and garbage, including cigarette butts and beer bottles, had been dumped at production sites, including the one giving rise to this litigation. It is difficult for the Court to determine in many instances whether the testimony is based on personal knowledge or hearsay. Certainly, the evidence viewed as a whole suggests contradictions. In a similar fashion, there is considerable testimony about the knowledge that teenagers and hunters visited the various well production sites. There also appear to be genuine issues of material fact concerning whether there was adequate signage on the property. While photographs taken shortly after the accident show the presence of the warning signs, there is conflicting testimony about the presence and adequacy of the signage on the property to warn of the high potential of danger. There also appear to be factual issues regarding whether the gate was opened and whether there is a duty for the gate to be closed.
 

 The defendants sought supervisory review of the trial court’s ruling. This court
 
 *1074
 
 granted the application and docketed the case for decision.
 

 DISCUSSION
 

 The defendants contend the trial court erroneously denied their motion for summary judgment.
 

 Appellate courts review summary judgments
 
 de novo,
 
 while considering the record and all reasonable inferences drawn from the record in the light most favorable to the non-movant.
 
 Hines v. Garrett,
 
 2004-0806 (La.6/25/04), 876 So.2d 764;
 
 Austin v. Bundrick,
 
 41,064 (La.App.2d Cir.6/30/06), 935 So.2d 836. Summary judgment is warranted only if there is no genuine issue of material fact and the mover is entitled to judgment as a | r,matter of law. LSA-C.C.P. art. 966(C)(1). In
 
 Hines, supra,
 
 our supreme court stated:
 

 In ruling on a motion for summary judgment, the judge’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but [is] to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party’s favor. A fact is material if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of a legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate.
 

 Id.
 
 at 765-66.
 

 The burden of proof remains with the movant. LSA-C.C.P. art. 966(C)(2). However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense.
 
 Id.
 
 Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
 
 Id.
 

 LSA-R.S. 9:2800.4 provides:
 

 A. As used in this Section:
 

 (1) “Owner” means the owner and also a tenant, lessee, occupant, or person in control of any farm or forest land or in control of any oil, gas, or mineral property.
 

 [[Image here]]
 

 [ ,/4) “Oil, gas, or mineral property” shall mean any land leased for the development and production of oil, gas, or minerals.
 

 [[Image here]]
 

 E. An owner of oil, gas, or mineral property shall not be liable to any person who unlawfully enters upon his oil, gas, or mineral property, for damages for any injury, death, or loss which occurs while on the oil, gas, or mineral property of the owner, unless such damage, injury, or death was caused by the intentional act or gross negligence of the owner.
 

 Gross negligence has a well-defined legal meaning that is distinctly separate, and different, from ordinary negligence.
 
 Rabalais v. Nash,
 
 2006-0999 (La.3/9/07), 952 So.2d 653;
 
 Roton v. Faulconer,
 
 42,452 (La.App.2d Cir.10/3/07), 966 So.2d 790,
 
 writ denied,
 
 2007-2165 (La.1/7/08), 973 So.2d 724;
 
 Foshee v. Louisiana Farm Bureau Cas. Ins. Co.,
 
 41,842, (La.App.2d Cir.1/31/07), 948 So.2d 1171,
 
 writ denied,
 
 2007-0483 (La.4/20/07), 954 So.2d 169. Gross negligence has been defined by our courts as the “want of even slight care and
 
 *1075
 
 diligence” and the “want of that diligence which even careless men are accustomed to exercise.”
 
 Id.
 
 It has also been defined as the “entire absence of care” and the “utter disregard of the dictates of prudence, amounting to complete neglect of the rights of others.”
 
 Id.
 
 Additionally, gross negligence has been described as an “extreme departure from ordinary care or the want of even scant care.”
 

 In the instant case, the trial court granted partial summary judgment in favor of Kelly and Brammer, ruling that the applicable standard of care in this matter is gross negligence. Plaintiffs have never denied that they entered the property unlawfully and have conceded that gross negligence is 17the applicable standard.
 
 [5]
 
 Additionally, plaintiffs have not alleged that Kelly and Brammer committed any intentional act. Thus, in order to find that defendants are liable for plaintiffs’ injuries, plaintiffs must meet their burden of proving that defendants’ conduct was grossly negligent.
 

 For purposes of their motion for summary judgment, the defendants, Kelly and Brammer do not dispute the fact that the gate was open. Posted on front of the gate was a sign which read, “DANGER. NO TRESPASSING. KEEP OUT.” Further, photographs introduced into evidence showed a sign on the fence next to the open gate, which read, “STOP. NO UNAUTHORIZED PERSONNEL BEYOND THIS POINT. HIGH PRESSURE NATURAL GAS AND FLAMMABLE LIQUID.” Additionally, there were stenciled warnings on the sides of the oil tanks at the site. The warnings provided information that the tanks contained oil and warned, “NO OPEN FLAME” and “NO SMOKING.”
 

 The record in this case contains transcripts of the depositions of the surviving teenagers, as well as the depositions of others involved in the investigation. The teenagers testified that they did not see the signs on either the gate or the fence. Danielle testified that she did not see any signs when the group entered the oil site. She stated she would not have gone had she been aware of the danger. She also testified that she was under the impression that the tanks were not working because “the gate was open and the tanks looked old....” Danielle admitted that she climbed on top of one of the tanks with cigarettes and a lighter.
 

 |sSherry also testified that she did not see any signs when the group entered the property. She testified that she knew the property was “somebody’s property;” however, she added if she had seen the signs, she would have known that she was not “authorized personnel” and that it was dangerous to be at the location. When she was interviewed on the morning of the incident, Sherry told investigators, “Someone on the tank was smoking. We think it was Matt.” However, subsequently, during her deposition, she denied seeing Matt or anyone else smoking at the site.
 

 During his deposition, Kyle testified that he had been to other oil well sites in the past, but he had never been to this particular site. He also testified that he did not see any warning signs displayed, but he knew the site was potentially hazardous and that there was the possibility of a fire and/or explosion. Kyle stated that he did not know what was stored inside the tanks but he knew it was “some type of chemical in those tanks.” He also admitted that he understood that open flames were not permitted at the sites. Kyle admitted that he, Matt, Danielle and Marcus had been smok
 
 *1076
 
 ing at the site. In his initial handwritten statement to the investigators immediately after the explosion, Kyle stated that Matt was smoking on top of the tank. However, during his deposition, Kyle testified that he did not actually see Matt smoking when Matt was on top the tanks. He stated that Matt proceeded to the catwalk with a lighted cigar in his hand, but he “thumped” the cigar to Kyle when Kyle and Danielle warned him about the danger of smoking on top of the tank.
 

 Marcus testified that when they arrived at the well site, he saw that 19“the gate was “wide open.” He stated that he did not “notice any signs or anything” on either the gate or the fence as they drove through the gate. Marcus initially testified that he did not understand that the site could be potentially dangerous, stating, “I just thought of it as like a gas station or something.... As long as you don’t light up anything or something, I thought wouldn’t nothing [sic] happen.” However, he further testified that he knew “something could blow up or something” if someone smoked at the site. Marcus explained that it was common knowledge in Webster Parish that “you don’t smoke at a tank site.” Additionally, Marcus testified that he saw the warnings stenciled on the side of the tanks which read, “No flame ... or open flame or something like that.”
 

 In
 
 Roton, supra,
 
 two teenagers, ages 14 and 15, rode a four-wheeler to an oil well site in rural Lincoln Parish. The teenagers had devised a game involving the oil well pumping unit, whereby they would remove metal rods from the fence surrounding the pumping unit and place the rods in holes on the counterweight. The teenagers would then hold onto the rods or pins in an effort to be lifted or slung into the air when the counterweight moved upward. On the day of the incident, one of the boys released an end of the rod as he was raised into the air. He was injured when he was struck by the counterweight; he died as a result of his injuries. The decedent’s parents filed two separate lawsuits against the owner/operator of the oil well site. The defendant moved for summary judgment, presenting evidence that the pumping unit was equipped -with a three-rail guardrail, and several warning signs were attached to the guardrails. There was also evidence that the word |]0“D ANGER” was displayed in white letters on a red background, and the sign cautioned that “this equipment starts automatically at any time.” The district court granted summary judgment in favor of the defendant. This court affirmed the lower court’s ruling. Citing LSA-R.S. 9:2800.4, we stated:
 

 The record is devoid of evidence that [the defendant] was grossly negligent or committed an intentional act causing [the decedent’s] death. A fence and warning signs were in place at the accident site; both of these measures were calculated to alert potential trespassers to stay away from the equipment. In the instant case, these reasonable measures were simply ignored by intelligent teenagers in pursuit of summer entertainment.
 

 Id.
 
 at 795-96.
 

 Similarly, the record in the instant case is devoid of any evidence that the death and injuries sustained by the plaintiffs were caused by the
 
 gross negligence
 
 of the defendants. Although the defendants conceded, for purposes of summary judgment, that the gate to the access road to the property had been left unlocked and open, the plaintiffs faded to present any evidence to show that they could carry their burden of proving that the defendants’ failure to secure the gate constituted “gross negligence.” It was undisputed that a fence was in place, and the record contains pho
 
 *1077
 
 tographs of the fence which bore warning signs to anyone who entered upon the property.
 

 Although some of the teenagers denied seeing the warning signs on the gate and the fence, others testified that they understood the potential dangers posed by smoking at oil well sites. As stated above, Marcus specifically testified that it was “common knowledge” that the sites were _|_y dangerous and that there was a risk of fire and explosion. Marcus also admitted that he saw the warnings stenciled on the tanks. Kyle also testified that it was “common knowledge” that the tank sites were dangerous. Kyle stated that he was aware that the site was potentially hazardous and that there was the possibility of a fire or explosion. According to Kyle, all of the teens, with the exception of Bridges, were smoking at the tank site. Sherry also testified that she knew they were in a dangerous location as soon as she saw the tanks.
 

 Again, other than allegations and conclu-sory contentions, plaintiffs failed to present any evidence to show that Kelly and Brammer’s actions caused or contributed to the accident. Plaintiffs argue that the defendants were grossly negligent in operating and securing their oil production site. Plaintiffs also contended that more warnings or prevention of access to the site could have prevented the accident. However, plaintiffs did not offer the deposition testimony of an expert or any other evidence to support this argument.
 

 In
 
 Robertson v. State of Louisiana, Through the Dept. Of Planning and Control,
 
 32,309 (La.App.2d Cir.12/10/99), 747 So.2d 1276,
 
 writ denied,
 
 2000-0041 (La.2/25/00), 755 So.2d 882, the plaintiffs’ son died after falling from the roof of a building at Louisiana Tech University. The student had accessed the roof by climbing up a steel beam buttress. This court rejected the plaintiffs’ argument that the university had the duty to “dissuade access” to the roof following prior instances of others climbing on the roof. We stated, “When the risk is created by the deliberate act of the | ^victim aimed at challenging an obvious danger, the victim alone can be solely at fault.”
 
 Id.
 
 at 1284. We further stated:
 

 [W]e find that Tech’s failure to act in these circumstances did not constitute negligence. The duty of Tech to provide a safe campus and not to act unreasonably with regard to its students did not extend to protect [the decedent] from his deliberate act of recklessness in climbing the Roof. The Roof cannot be considered as an open and accessible part of the campus. Any prudent person would recognize the action of climbing the Roof both as an unreasonable danger to himself and as an unlawful physical invasion of property. Any damage caused to such an off-limits structure would amount to the intentional tort of trespass.
 

 The plaintiffs’ argument that the three prior instances gave rise to an affirmative duty to act is a miscalculated statistical focus.... The three prior acts, like any previous reckless acts on the campus by Tech students, intoxicated or otherwise, cannot be statistically isolated to serve in a formula for negligence in light of the non-custodial university/student relationship and the obvious danger of the Roof.
 

 Id.
 
 at 1284.
 

 In
 
 Racine v. Moon’s Towing,
 
 2001-2837 (La.5/14/02), 817 So.2d 21, a group of teenagers trespassed onto unfenced property and discovered an unattended flatbed truck parked on the property. The doors to the truck were locked but the windows were partially open and the keys were in the ignition. One of the teens climbed into
 
 *1078
 
 the window of the truck and started the engine, but was unable to turn it off. Another teen jumped onto the running board of the truck and reached through the window to try to turn the ignition off. The truck went into gear and began rolling forward. The teen tried to jump to the ground but was pinned between the truck and the fence. He died as a result of his injuries. The parents of the decedent filed suit | ^against several defendants, including the property owner, arguing,
 
 inter alia,
 
 that the truck on the property with the keys inside created an attractive nuisance; the property owner created an unreasonably dangerous condition by parking the truck on his property; the property owner was negligent in parking the truck on his property. The property owner filed a motion for summary judgment, which the district court denied. The appellate court affirmed the denial of summary judgment. The Supreme Court reversed, stating:
 

 The boys were clearly old enough to know what they were doing was wrong and to appreciate the dangers inherent in their actions....
 

 * * *
 

 It is undisputed that the parked truck by itself did not create an unreasonable risk of harm. No harm would have resulted from the truck in this case but for the decision of Logan and the other teenagers to trespass on [the property owner’s] property, break into the truck, and start the engine. [The property owner] cannot be liable as a matter of law under these facts.
 

 Id.
 
 at 25-26.
 

 In the instant case, the record, while voluminous, is devoid of evidence that defendants were grossly negligent. As stated above, although the teens denied seeing the warnings, the photographs in the record indicate that Kelly and Brammer took reasonable measures to alert potential trespassers of the potential hazards of the tanks. The deposition testimony showed that the teens all recognized the potential dangers associated with their presence at the oil/tank site. Yet, the teens failed to use ordinary care under the circumstances. They unlawfully entered the site and elected to |14engage in dangerous activities in close proximity to the tanks. Not only did the teens smoke and consume alcoholic beverages near the tanks, but three of them chose to climb on top of the catwalk near the tanks; two of them actually climbed on top of the tanks, and one sustained fatal injuries.
 

 Additionally, although plaintiffs’ petition indicates that the explosion may have been caused by an unlocked “thief hatch,” plaintiffs produced no evidence to support that allegation. In sum, as stated above, although this was a tragic accident, plaintiffs failed to “produce factual support sufficient to establish that they would be able to satisfy their evidentiary burden of proof at trial.”
 

 Based on the record before us, we find that Kelly and Brammer met their burden of proving that they are entitled to summary judgment, as plaintiffs have proven no basis for gross negligence on the part of the defendants. Accordingly, the district court erred in denying the motion
 
 for
 
 summary judgment in favor of defendants.
 

 CONCLUSION
 

 For the reasons set forth herein, we grant the defendant’s writ application and reverse the district court’s ruling denying the defendants’ motion for summary judgment. Costs of the appeal are assessed to plaintiffs.
 

 [1]
 

 . The plaintiffs did not dispute the fact that these teenagers were trespassing on the property.
 

 [2]
 

 . Danielle testified that she, Matt, Kyle and Marcus were drinking beer. However, Kyle, Marcus and Sherry denied drinking beer while they were at the site.
 

 [3]
 

 . Matt’s blood alcohol level was 0.11 grams percent.
 

 [4]
 

 . The lawsuit was originally filed in Caddo Parish but was later transferred to Webster Parish.
 

 [5]
 

 . Plaintiffs concede in their brief that this case is governed by the standard of gross negligence, as outlined in LSA-R.S. 9:2800.4(E).