PEATROSS, J.
|2Wilcox Operating Corporation (“Wilcox”) appeals a summary judgment in favor of Gemini Explorations, Inc. (“Gemini”). The trial judge found there to be no facts in dispute and that, as a matter of law, Wilcox had failed to comply with a previous settlement agreement between the parties. The summary judgment terminated the settlement agreement and an assignment of mineral interest executed pursuant to that settlement agreement and cancelled a lis pendens filed by Wilcox. The trial judge further ruled that the Department of Conservation (“DOC”) has jurisdiction over the determination of whether the Bossier Shale is included in the Cotton Valley Formation. As stated, Wilcox appeals and, for the reasons stated herein, we reverse the summary judgment in favor of Gemini and remand for further proceedings.
FACTS
This appeal concerns mineral interests in the bed of Caddo Lake in North Caddo Parish, Louisiana. Gemini and Wilcox entered into a letter agreement regarding those interests on September 14, 2004. A dispute as to the interpretation of that letter agreement was tried in court and resulted in a settlement agreement that was stipulated to and dictated into the record on December 13, 2006. Briefly stated, Gemini was lessee by assignment of State Lease No. 173, covering the bed beneath Caddo Lake. The settlement agreement provided that Gemini was to sublease one-half of the acreage, from 3,000 feet subsurface to 100 feet below the base of the Cotton Valley Formation, to Wilcox. Wilcox paid $123,000 for geophysical information and the first 640 acres of the sublease. It also held an option to sublease all of Gemini’s remaining acreage for $175 per acre “within six months of delivery of gas to a pipeline on the unit that they purchased today, or one year after perforation and testing of the well, whichever is earlier.” Wilcox had nine months from the date of the settlement to procure a signed drilling contract; and, if no rig was available, it had an additional *318 three months to begin drilling. Following the recitation of the settlement agreement into the record, it was agreed by the parties that the $123,000 would be paid by Wilcox to Gemini that day and that the Exploration Agreement would be drafted by Gemini and provided to Wilcox by week’s end. The parties apparently disputed certain items in the Exploration Agreement and both |sWilcox and Gemini sought court enforcement of the settlement agreement. The court ordered Wilcox to sign the Exploration Agreement. Thereafter, Wilcox requested Gemini make several changes in the draft agreement, which Gemini did, yet the agreement was never executed by the parties. There is a dispute as to which party, Wilcox or Gemini, refused to execute an Exploration Agreement. Wilcox argues that it presented a signed agreement to Gemini and Gemini argues that the opposite is true.
Mark Preddy, President of Wilcox, testified by affidavit that, immediately following the settlement agreement, Wilcox began efforts to drill an initial well and had obtained a contract to drill within nine months; however, no drilling rig was available within those nine months. Preddy further testified that a well was drilled within the one-year period. Drilling began on October 26, 2007, on Hall-Hargraves # 1, which was a unit well for two units, both of which contain a portion of the subleased property. Five zones in the Cotton Valley Formation were tested for production with Wilcox spending more than $8 million on this venture. According to Preddy’s affidavit, a pipeline was constructed to deliver production and the first perforation of the well was on November 5, 2008. Despite perforation at five levels, however, none of the levels were productive.
This litigation ensued during the building of the pipeline by Wilcox. On August 19, 2008, Gemini filed a “Petition for Contempt, Damages, Injunctive Relief, Termination of Settlement Agreement and to Declare Option Terminated or Alternatively, for Specific Performance” alleging that the one-year time period from settlement had run with no well drilled by Wilcox on the subleased property. Various pleadings were filed by the parties in the matter; specifically, Wilcox filed a rule to show cause why Gemini should not have to execute an exploration agreement. At that point, no exploration or operating agreement had been signed by both parties.
In addition, a dispute arose as to whether the Bossier Shale was part of the Cotton Valley Formation, which was of interest to Wilcox in determining whether to exercise its option on the additional acreage. It is the position of Wilcox that it had until November 5, 2009, to exercise that option, which is one year from the first perforation of Hall-Hargraves # 1 on November 5, 2008. This issue prompted Wilcox to then file a |4Reconventional Demand requesting a declaratory judgment that the Bossier Shale is a part of the Cotton Valley Formation.
Ultimately, Gemini filed the instant Motion for Summary Judgment on July 14, 2009, which was heard on August 17, 2009. The trial court granted summary judgment in favor of Gemini, finding there to be no facts in dispute and that Wilcox had not complied with the terms of the settlement agreement. Following a hearing on a Motion to Reconsider the ruling, at the suggestion of the trial judge, the ruling was amended to specifically provide that the settlement agreement was terminated, the lis pendens cancelled, the assignment of the leasehold interest in the 640 acres dissolved and that Gemini retain the $123,000 purchase price for the sublease. In addition, the trial judge dismissed Wilcox’s request for declaratory judgment, *319 concluding that the DOC has jurisdiction over the question of whether the Bossier Shale is included in the Cotton Valley Formation and has already made that determination. This appeal ensued.
DISCUSSION
The appellate court’s review of a grant or denial of summary judgment is de novo. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226; Schroeder v. Board of Sup’rs of Louisiana State University, 591 So.2d 342 (La.1991). A motion for summary judgment is a procedural device used when there is no genuine issue of material fact. King v. Illinois Nat. Ins. Co., 08-1491 (La.4/3/09), 9 So.3d 780. The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action allowed by law. La. C.C.P. art. 966(A)(2). A motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Cutsinger v. Redfem, 08-2607 (La.5/22/09), 12 So.3d 945.
The burden of proof remains with the movant. La. C.C.P. art.'966(C)(2). If the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action or defense, but, rather, to point j sout to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. Wall v. Kelly Oil & Gas Company, Inc., 44,604 (La.App.2d Cir.12/21/09), 27 So.3d 1071, unit denied, 10-0122 (La.4/5/10), 31 So.3d 372.
In ruling on a motion for summary judgment, the judge’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but is to determine whether there is a genuine issue of triable fact. Wall, supra, citing Hines v. Garrett, 04-0806 (La.6/25/04), 876 So.2d 764. All doubts should be resolved in the nonmov-ing party’s favor. Id. A fact is material if it potentially insures or precludes recovery, affects a litigant’s ultimate success or determines the outcome of a legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate. Id.
In the case sub judice, it would be Gemini’s burden at trial to prove that Wilcox had not complied with the settlement agreement. In support of the trial court’s summary judgment, Gemini maintains on appeal that the drilling of Hall-Hargraves # 1 failed to satisfy the drilling requirements of the settlement agreement. Gemini argues that this was a test well drilled on adjacent acreage — not on the subleased property — and that no well was ever drilled on the subleased property. According to Gemini, even if the test well complies with the settlement agreement, it was dry and does not hold the subleased acreage in a unit for production. While the units contained part of the 640-acre tract, the well never produced and the unitization has expired. Gemini argues that the test well has been abandoned and the wellhead removed. Gemini suggests that these facts are undisputed and support the *320 trial court’s granting of summary judgment in its favor. We disagree.
Wilcox asserts that only one of the alleged undisputed facts is actually undisputed, ie., the existence of the settlement agreement entered into the record on December 13, 2006. According to Wilcox, the remaining allegedly undisputed facts are very much in dispute, making summary | (-judgment improper. Our review of the record, including the affidavits supporting and opposing the motion for summary judgment, lead us to agree with Wilcox that factual issues do exist, making summary judgment inappropriate in this matter.
First, the parties vehemently dispute whether or not a well was drilled on the subleased property within the time constraints of the settlement agreement. In opposition to the motion for summary judgment, Wilcox presented the affidavit of Mark Preddy, as previously mentioned, which asserts that Wilcox drilled a well on a unit that included part of the 640 acres. According to Wilcox, this is the same as drilling on the property itself.[1] Second, the existence of a signed Exploration Agreement as ordered by the trial judge is disputed. As previously stated, Gemini asserts that Wilcox failed to execute the initial, and then the revised, Exploration Agreement submitted to it by Gemini. On the other hand, the record contains an Exploration Agreement submitted to Gemini and signed by Wilcox and Wilcox asserts that it is Gemini that has failed to sign the Exploration Agreement. Third, Wilcox disputes that the subleased property has not been placed in a unit for a viable well drilled near the subleased property. Gemini admitted that the Hall-Hargraves # 1 well was the unit well for two units, both of which contain portions of the subleased property. Fourth, also through the affidavit of Preddy, Wilcox challenges the allegedly undisputed fact that the test well did not produce marketable hydrocarbons and was, therefore, abandoned. Initially, Wilcox notes that this argument is [7a concession on the part of Gemini that a well was drilled as contemplated by the settlement agreement. Next, Wilcox asserts that the well was not abandoned because Wilcox planned to perforate and complete the well in the Bossier Shale portion of the formation. Sixth, Wilcox argues that the DOC has not ruled that the Bossier Shale does not form part of the Cotton Valley Formation. In that regard, Wilcox does not share Gemini’s interpretation of the Orders of the DOC relative to the defining of the production units in the Haynesville Shale Reservoir A, and the Cotton Valley Reservoir A, of the Caddo-Pine Island Field.
These factual issues are material as they are central to either ensuring or precluding the relief sought by Gemini in this case. We conclude, therefore, that sum *321 mary judgment was improperly granted. Finding material facts to be at issue herein, we pretermit discussion of any of the remaining issues raised on appeal.
DECREE
For the foregoing reasons, the summary judgment of the trial court in favor of Gemini Explorations, Inc., is reversed and the matter is remanded to the trial court for further proceedings. Costs of appeal are assessed to Gemini Explorations, Inc.
REVERSED AND REMANDED.

. In support of its position, Wilcox points the court to La. R.S. 30:10 A(l)(b), which reads, in pertinent part:
§ 10. Agreements for drilling units; pooling interests; terms and conditions; expenses
A. When two or more separately owned tracts of land are embraced within a drilling unit which has been established by the commissioner as provided in R.S. 30:9(B), the owners may validly agree to pool their interests and to develop their lands as a drilling unit.
(1) Where the owners have not agreed to pool their interests, the commissioner shall require them to do so and to develop their lands as a drilling unit, if he finds it to be necessary to prevent waste or to avoid drilling unnecessary wells.
[[Image here]]
(b) The portion of the production allocated to the owner of each tract included in a drilling unit formed by a pooling order shall, when produced be considered as if it had been produced from his tract by a well drilled thereon.